## UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| In re:  FRANKLIN ALBERT BENNETT, III, | : | Chapter 13 |
| | : | |
| | : | **Bankruptcy No. 14-13143 ELF** |
| Debtor. | : | |
| | : | |
| | : | |
| FRANKLIN ALBERT BENNETT, III, | : | |
| | : | |
| Plaintiff, | : | |
| | : | **Adversary No. 14-666 ELF** |
| v. | : | |
| | : | |
| BANK OF AMERICA NATIONAL ASSOC., | : | |
| BANK OF NEW YORK MELLON, | : | |
| | : | |
| Defendants. | : | |

# M E M O R A N D U M

## I.  INTRODUCTION

Debtor Franklin Bennett ("the Debtor") filed a voluntary chapter 7 bankruptcy petition on

April 21, 2014.  Upon the Debtor's request, the case was converted to chapter 13 on May 2,

2014.  (Bky No. 14-13143, Doc. # 23).

On October 22, 2014, Bank of America, N.A. ("Bank of America") filed a proof of claim

asserting a claim of $404,625.07 secured by the Debtor's interest in the real property located at

4712 Castor Avenue, Philadelphia, PA ("the Property").  On November 26, 2014, the Debtor

filed an objection to Bank of America's proof of claim ("the Objection").  (Id., Doc. # 77).  In the

Objection, the Debtor disputed the amount of the claim.  Then, on November 30, 2014, the

Debtor filed this adversary proceeding against Bank of America and The Bank of New York

Mellon ("BNYM").  In his multi-count Complaint, the Debtor attacked the validity of the

mortgage against the Property held by each Defendant and requested a determination that the

mortgages are void.  By order dated January 14, 2015, I consolidated for all purposes the

contested matter arising from the Objection and the adversary proceeding.  (Adv. No. 14-666,

Doc. # 7).

On December 29, 2014, Bank of America filed a Motion to Dismiss the Complaint ("the

Motion") (Doc. # 3) under Fed. R. Civ. P. 12(b)(6) (incorporated by Fed. R. Bankr. P. 7012).  In

the Motion, Bank of America asserts that the Complaint should be dismissed for lack of standing

and legal insufficiency.  Bank of America also asserts that the statute of limitations has expired

on several claims.  See generally Schmidt v. Skolas, 770 F.3d 241, 249 (3d Cir. 2014) (statute of

limitations defense may be raised in Rule 12(b)(6) motion if the facts alleged in the complaint

show that the action is untimely).

On February 17, 2015, the Debtor filed his response to the Motion.  (Doc. # 15).[1]

As explained more fully below: (1) the Motion will be granted in part and denied in part;

and (2) the dismissed counts will be dismissed without leave to amend.


## II.  LEGAL STANDARD

A motion under Fed. R. Civ. P. 12(b)(6) tests the legal sufficiency of the factual

allegations of a complaint, see Kost v. Kozakiewicz, 1 F.3d 176, 183 (3d Cir. 1993), and

determines "whether the plaintiff is entitled to offer evidence to support the claims," Bell

---

[1]        BYNM has yet to file any response to the Complaint.

Atlantic Corp. v. Twombly, 550 U.S. 544, 563 n.8. (2007).

A defendant is entitled to dismissal of a complaint only if the plaintiff has not pled "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 547. A claim is facially plausible where the facts set forth in the complaint allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

In evaluating the plausibility of the plaintiff's claim, the court conducts a context-specific evaluation of the complaint, drawing from its judicial experience and common sense. See, e.g., Fowler v. UPMC Shadyside, 578 F.3d 203, 211 (3d Cir. 2009); In re Universal Marketing, Inc., 460 B.R. 828, 834 (Bankr. E.D. Pa. 2011) (citing authorities); In re Olick, 2011 WL 2565665, at *1–2 (Bankr. E.D. Pa. June 28, 2011). In doing so, the court is required to accept as true all allegations in the complaint and all reasonable inferences that can be drawn therefrom, viewing them in the light most favorable to the plaintiff. See, e.g., Hishon v. King & Spalding, 467 U.S. 69, 73 (1984); Taliaferro v. Darby Township Zoning Board, 458 F.3d 181, 188 (3d Cir.2006). But, the court is not "bound to accept as true a legal conclusion couched as a factual allegation." Iqbal, 556 U.S. at 678, 129 S. Ct. 1937 (quoting Twombly, 550 U.S. at 555).

The Third Circuit Court of Appeals has condensed these principles into a three (3) part test:

- First, the court must take note of the elements a plaintiff must plead to state a claim.

- Second, the court should identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth.

- Third, where there are well-pled factual allegations, a court should assume

their veracity and then determine whether they plausibly give rise to an
entitlement for relief.

Santiago v. Warminster Twp., 629 F.3d 121, 130 (3d Cir. 2010) (quotations and citations

omitted).

Finally, in assessing a Rule 12(b)(6) motion, the court may "consider the allegations in

the complaint, exhibits attached to the complaint and matters of public record ... [as well as,]

'undisputedly authentic documents' where the plaintiff's claims are based on the documents and

the defendant has attached a copy of the document to the motion to dismiss." Unite Nat'l Ret.

Fund v. Rosa Sportswear, Inc., 2007 WL 2713051, at *4 (M.D. Pa. Sept. 14, 2007) (citing

Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993));

see also In re Angulo, 2010 WL 1727999, at *12 n.1 (Bankr. E.D. Pa.  Apr. 23, 2010).


## II.  THE COMPLAINT

### A.

The Complaint set out eight (8) claims as follows:

- Count I - Quiet Title

- Count II - Slander of Title

- Count III - Unjust Enrichment

- Count IV - Civil Conspiracy

- Count V - Aiding and Abetting

- Count VI - Fraud

- Count VII,  RICO, 18 U.S.C. §§1961-1968; and

- Count VIII - Valuation of Property.[2]

The Debtor has withdrawn Counts V and VII.  (See Debtor's Am. Response at 4).


**B.**

In support of his claims, the Debtor makes the following factual assertions.

Dolores M. Snyder owned the real property at 4712 Caster Avenue, Philadelphia, Pennsylvania ("the Property").  (Complaint ¶¶ 5-8).  Mrs. Snyder died intestate on August 16, 2004.  (Compl. ¶¶ 9-10).  The Register of Wills for Philadelphia County granted Ms. Snyder's son, Richard M. Snyder ("Snyder"), Letters of Administration on August 30, 2004 with respect to the decedent's estate ("the Estate").  (Compl. ¶¶11-13; Exhibit B).

Thereafter, Snyder entered into four (4) transactions that affected title to the Property.

The first transaction was a deed transfer that occurred on October 10, 2005 ("the 1st Deed Transfer").  Snyder, acting as administrator of the Estate, deeded the property from his mother's Estate to himself, individually, for $1.00.  (Compl. ¶ 15; Ex. C).  In connection with the 1st Deed Transfer, Snyder filed a Philadelphia Real Estate Transfer Tax Certification.  In the Tax

---

[2]        Fed. R. Bankr. P. 7008 requires that a complaint state whether the claims are core or non-core.  See 28 U.S.C. §157(b)(2).  Fed. R. Bankr. P. 7012(b) requires that a "responsive pleading" admit or deny that a proceeding is core or non-core and, if non-core, whether the responding party consents to the entry of a final judgment by the bankruptcy court.  Neither the Complaint nor the Motion addressed whether the Debtor's claims are core or non-core.  Consequently, by Order dated March 31, 2015, I directed both parties to do so.  (Doc. # 16).

        The Debtor filed a statement asserting that all of his claims are core.  (Doc. # 18).  Bank of America took the position that all of the claims are non-core, but then consented to the entry of a final judgment by the bankruptcy court.  (Doc. # 19).  See generally Wellness Intern. Network Ltd. v. Sharif, 134 S. Ct. 2901 (2014) (certiorari granted to consider question whether the bankruptcy court may enter a final order in a non-core matter with the parties' consent).

Certification, he claimed an exemption from the real estate transfer tax based upon "Will or intestate succession," and as "Administrator of Estate to himself." (Compl. Ex. C). Snyder did not seek court approval of the 1st Deed Transfer. (Compl. ¶ 16). <u>See generally</u> 20 Pa. C.S. §3356 (requiring court approval for purchases by personal representative).

In the second transaction, Snyder encumbered the Property by executing a promissory note and mortgage in favor of America's Wholesale Lender ("the 1st Mortgage") on October 10, 2005. (Compl. ¶25, Ex. P). The 1st Mortgage was recorded December 1, 2005. (<u>Id.</u>, Ex. Q). The Debtor alleges that through a series of assignments, the 1st Mortgage was assigned to Defendant Bank of America. (<u>Id.</u> ¶¶ 38-41). The various assignments were filed with the Philadelphia Recorder of Deeds on May 31, 2007, April 14, 2010, April 23, 2012 and July 22, 2013, with the last assignment purporting to correct the "assignor and assignee name[s]" on the April 14, 2010 assignment. (Compl. ¶¶ 38-41; Exs. L-O).[3]

Third, Snyder also took out a second mortgage against the Property ("the 2nd Mortgage") on May 22, 2006 in favor of Countrywide Bank, N.A. (<u>Id.</u> ¶ 27). Countrywide subsequently assigned all of its rights under the 2nd Mortgage to Defendant BNYM. (<u>Id.</u> ¶ 28).

---

[3]    The mortgage assignments were as follows:

| Date Recorded | Assignor | Assignee |
|---|---|---|
| 5/31/07 | MERS as nominee for America's Wholesale Lender | Countrywide Home Loans |
| 4/14/10 | Countrywide Home Loans, Inc. | BAC Home Loans Servicing, LP |
| 4/23/12 | BAC Home Loans Servicing, LP | Bank of America, N.A. |
| 7/22/13 | Countrywide Home Loans, Inc. | Bank of America, N.A. |

The final transaction affecting title to the Property occurred on July 23, 2011 ("the 2nd

Deed Transfer").  Snyder, in his capacity as administrator of the Estate (and not in his individual

capacity, despite the 1st Transfer), executed a deed transferring the Property to the Debtor.[4]  (Ex.

K).[5]  The Debtor claims he made significant improvements to the Property with the knowledge of

the Defendants.  (Id. ¶¶ 53-55).


## C.

The Complaint also is based, in part, on certain actions that Bank of America took in

enforcing its rights as mortgagee.

Bank of America filed a foreclosure action against the Property in the Pennsylvania Court

of Common Pleas, Philadelphia County ("the C.P. Court").  (Id. ¶ 56).  Bank of America

obtained a default judgment and the Property was sold at a sheriff's sale on July 1, 2008.  (Id. ¶¶

58-59).  Fannie Mae was the purchaser at the sale.  (Id. ¶ 63).  However, on November 23, 2009,

Bank of America sought to "undo" the sheriff's sale by filing a motion to set aside the sale and

---

[4]        Neither Bank of America nor the Debtor discussed this anomaly.  After transferring the
Property from himself as administrator, to himself in his personal capacity, Snyder, again as
administrator, later transferred the Property to the Debtor.  But presumably, he no longer had title to the
Property as administrator when he transferred the Property to the Debtor.  What is the consequence of
this apparent defect in the chain of title?  Does it mean that the Debtor's own title to the Property is
defective?  Or, did the parties to the 2nd Deed Transfer intend to refer to the grantor as Snyder
individually rather than Snyder as administrator  –  which might be a correctable, clerical error that
would not impair the Debtor's title?  At the motion to dismiss stage, I will make the inference favorable
to the Debtor and assume the latter.


[5]        The Complaint alleges that the transfer occurred on or about July 11, 2011.  (Compl. ¶
51).  The deed is dated July 23, 2011.

strike the sheriff's deed on the ground that it had reached an agreement with Snyder to resolve

the delinquency and cure the default.  (Id. ¶ 60, Ex. G).[6]  The C.P. Court granted the motion to

set aside the sheriff's sale by order dated December 17, 2009.  (Id. ¶ 62, Ex. H).

## D.

The Debtor does not claim that he was a party to any of the Snyder transactions other than

the 2nd Deed Transfer.  Nonetheless, the Debtor bases some of his claims on injuries he alleges

that Snyder suffered during the course of the mortgage transactions and the subsequent

assignments.  The Debtor asserts that the mortgage lenders charged Snyder exorbitant fees and

engaged in fraudulent activity in connection with the mortgage loans.  (Id. ¶¶ 30-31, 33).  The

Debtor also alleges irregularities in Bank of America's actions to have the sheriff's sale set aside.

(Id.  ¶¶ 61, 63, 67).

## IV.  DISCUSSION

### A.  Count I - Quiet Title

### 1.

Under Pennsylvania law, an action to quiet title is a civil action that may be brought, inter

alia:

> where an action of ejectment will not lie, to determine any right, lien, title or
> interest in the land or determine the validity or discharge of any document,
> obligation or deed affecting any right, lien, title or interest in land; [or],

---

[6]    The Debtor claims no agreement ever existed between Bank of America and Snyder.
(Compl. ¶ 61).

> to compel an adverse party to file, record, cancel, surrender or satisfy of record, or admit the validity, invalidity or discharge of, any document, obligation or deed affecting any right, lien, title or interest in land.

Pa. R. Civ. P. 1061(b); see also Bruker v. Carlisle Borough, 376 Pa. 330, 334 (Pa. 1954). It is considered an action at law, not equity. See Standard Pennsylvania Practice §120:139 (West 2015) ("SPP").

To prevail in an action to quiet title, the plaintiff must make a prima facie showing that he holds title to the property and that such title is better title than that of the adverse party. E.g., Poffernberger v. Goldstein, 776 A.2d 1037, 1041 (Pa. Super. Ct. 2001) (internal quotations and citations omitted). The burden of proof is on the plaintiff. E.g., Cox's Inc. v. Snodgrass, 92 A.2d 540, 541-42 (Pa. 1953); Montrenes v. Montrenes, 513 A.2d 983, 405 (Pa. Super. Ct. 1986).

**2.**

The Debtor contends that Bank of America's mortgage is invalid and seeks quiet title relief to remove what he asserts is a cloud on his title to the Property.

The initial premise of the Debtor's legal theory is that the 1st Deed Transfer (from Snyder as Administrator to Snyder, individually) was void. According to the Debtor, Snyder had no ownership interest in the Property (in any capacity) and therefore, no authority to encumber the Property with mortgages, thus rendering void the subsequent 1st Mortgage and successive assignments leading to the assignment to Bank of America.

The Debtor bases his attack of the 1st Deed Transfer on §3356 of the Pennsylvania Decedents, Estates, and Fiduciaries Code, 20 Pa. C.S. §3356. Section 3356 provides in relevant part:

§ 3356.  Purchase by personal representative.

In addition to any right conferred by a governing instrument, if any, **the personal representative, in his individual capacity, may bid for, purchase, take a mortgage on, lease, or take by exchange, real or personal property belonging to the estate, subject, however, to the approval of the court**, and under such terms and conditions and after such reasonable notice to parties in interest as it shall direct.

(emphasis added).

Section 3356 of the Pennsylvania Probate Code requires the administrator of an estate to obtain court approval prior to any sale of estate property to the administrator himself.  The Debtor alleges that Snyder never received court approval prior to or after the 1st Deed Transfer, and therefore, the deed is void and a legal nullity.  (Debtor Response 9-10).

Bank of America claims that the deed is valid because the 1st Deed Transfer was a distribution from the Estate, not a purchase by Snyder that required court approval.  (Motion at 9-11).

### 3.

For the Debtor to prevail based upon §3356, the Debtor must establish that the 1st Deed Transfer was either void or, at least, "voidable".[7]  The Debtor has not pled facts sufficient to

---

[7]      If the 1st Deed Transfer was a void transaction, the 1st Mortgage would be invalid.  See generally Harris v. Harris, 239 A.2d 783, 784–85 (1968) (transfer based on forged deed cannot pass title, even to a good faith purchaser); see also Bennerson v. Small, 842 F.2d 710, 714 (3d Cir. 1988) (same).

If the 1st Deed transfer is merely "voidable," the issue is more complicated.  The Commonwealth Court of Pennsylvania has stated:

The difference between a void transaction and a voidable one is noteworthy. Void acts have no legal effect whatsoever. They are absolute nullities. Voidable acts, however, are valid until annulled. Where, as here, third parties become

(continued...)

-10-

support the claim for two (2) independent reasons.

First, the Debtor has not alleged facts supporting the essential determination under 20 Pa.

C.S. §3356: that the transaction was a "purchase" from, rather than a distribution by, the Estate.

The Debtor alleges only that Snyder, as administrator of the Estate, transferred the Property to

himself, in his personal capacity.  The Complaint is devoid of facts regarding the identities of

heirs other than Snyder.[8]  (Compl. ¶¶ 11,13).  Further, Snyder claimed an exemption from the

real estate transfer tax under the will or intestate succession exception.  (See Ex. C, Philadelphia

Real Estate Tax Certification).  Thus, the facts alleged and the documents attached to the

---

[7](...continued)
involved before an attempt at avoidance, the difference between a void
transaction and a voidable one is critical.

See Vine v. State Employees' Retirement Bd., 956 A.2d 1088, 1094 (Pa. Cmwlth. Ct. 2008) (citations
omitted), rev'd on other grounds, 9 A.3d 1150 (Pa. 2010).

There are no Pennsylvania court decisions that provide guidance as to the effect of the
avoidance of a transfer due to the grantor's failure to comply with 20 Pa. C.S. §3356 on a third party that
engaged in a transaction with the transferee prior to the avoidance.  Analogous areas of the law suggest
that the outcome may depend on whether the third party (in this adversary proceeding, that would be
Bank of America) was a bona fide purchaser for value without notice of the defect in their title.  See In re
Fowler, 525 B.R. 157, 196 (Bankr. E.D. Pa. 2010) (citing cases involving the rights of subsequent
purchasers as against the holders of prior, unrecorded interests); see also 11 U.S.C. §550(e)(1) (after
avoidance of a transfer, a good faith transferee may retain its lien in certain circumstances).

The point here is that if the Debtor made out a prima facie case that the 1st Deed Transfer was
avoidable, Bank of America might have had to rely on an affirmative defense to protect its mortgage
position, thus making it inappropriate to dismiss the Debtor's claim under Rule 12(b)(6).  However, it is
unnecessary to decide whether a violation of 20 Pa. C.S. 3356 gives rise to any type of avoidance power
(or is remediable only by surcharging the offending estate fiduciary) or whether a good faith transferee
can defeat an avoidance claim.  As explained below, the Debtor has no legally cognizable claim for the
avoidance of the 1st Deed Transfer and the 1st Mortgage.

[8]    If Snyder is the sole heir of the Estate, it would be highly unlikely that Snyder would
have purchased the Property as opposed to transferring the Property under the state intestate laws.

-11-

Complaint are consistent with a transfer in the nature of a distribution to an heir of the Estate.

<u>See</u> 20 Pa. C.S. §3352 (a personal representative may distribute property of a decedent's estate without court approval).[9]

Based on the facts as pled and the supporting documentation, there is no plausible basis to conclude the 1st Deed Transfer was a sale under 20 Pa. C.S. §3356.  <u>See</u> <u>Twombly</u>, 550 U.S. at 547.

While this first flaw in the Complaint potentially could be cured by pleading additional facts in an amended complaint, there is a second flaw that is incurable.  Even assuming that the 1st Deed Transfer was a §3356 "purchase," the Debtor has not pled facts suggesting he has the requisite standing to invoke the statute to attack the validity of the 1st Deed Transfer and the subsequent mortgage conveyances.

The doctrine of standing requires a plaintiff to establish that (1) he has suffered an injury in fact; (2) there is a causal connection between the injury and the conduct complained of; and (3) it is likely that the alleged injury will be redressed by the relief sought.  <u>E.g.</u>, <u>Lujan v. Defenders of Wildlife</u>, 504 U.S. 555, 560-61 (1992); <u>In re Global Indus. Technologies, Inc.</u>, 645 F.3d 201, 210 (3d Cir. 2011).  An injury in fact is the "invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical."  <u>Berg v. Obama</u>, 586 F.3d 234, 239 (3d Cir. 2009) (quoting <u>Lujan</u>, 504 U.S. at 560

---

[9]     20 Pa. C.S. §3532 provides:

>       A personal representative, at his own risk and without the filing, audit or confirmation of his account, may distribute real or personal property and such distribution shall be without liability to any claimant against the decedent, unless the claim of such claimant is known to the personal representative  .  .  .  .

(internal citations and quotations omitted)).

The defect in the Debtor's claim is the lack of any allegation that he has a legally protectable interest covered by 20 Pa. C.S. §3356 in connection with the Estate of Dolores M. Snyder.  The §3356 requirement of court approval of a self-dealing transaction by the fiduciary of a decedent's estate is designed to protect the heirs and creditors of the decedent's estate.  Accord In re Estate of Frey, 693 A.2d 1349, 1354 (Pa. Super. Ct. 1997).  Therefore, only those who have a right of inheritance or distribution from the estate may challenge a transaction by an estate fiduciary based on the failure to comply with §3356.  In re Estate of Drummond-Poles, 2011 Phila. Ct. Com. Pl. LEXIS 211, at *5 (Pa. C.P. 2011).

The Debtor has not alleged (nor is there any reason to believe that he could allege) that he was an heir or a creditor of the Estate.  Section 3356 does not confer standing on third parties to collaterally attack the validity of property transfers from a decedent's estate.  Id. at *5-6.  As a stranger to the Estate, the Debtor has no legally protectable interest affected by the requirements of §3356.[10]

---

[10]    The Debtor's lack of standing also is illustrated by the Pennsylvania decisions holding that violations of §3356 may result in the imposition of a surcharge on the offending fiduciary.  See In re Estate of Aiello, 993 A.2d 283, 289 (Pa. Super. Ct. 2010) (citing Frey, 693 A.2d at 1353 and In re: Estate of Dobson, 417 A.2d 138 (Pa. 1980)); see also Pomeroy v. Bushong, 177 A. 10, 11  (Pa. 1935) (executor liable for surcharge to estate).  The purpose of the surcharge is to compensate estate beneficiaries for damages suffered as a result of the fiduciary's inadequate conduct.  Accordingly, there is nothing in the nature of the surcharge remedy that suggests that §3356 may be invoked by anyone other than an estate beneficiary.

## B. Slander of Title

### 1.

Slander of title is "is the false and malicious representation of the title or quality of another's interest in goods or property." Pro Golf Mfg. v. Tribune Review Newspaper Co., 809 A.2d 243, 246 (Pa. 2002); Deve Dev., Inc. v. Gargiulo, 2006 Phila. Ct. Com. Pl. LEXIS 31, 4-5 (Pa. C.P. 2006); accord Lincoln v. Magnum Land Servs., LLC, 2013 WL 2443926, at *5 (M.D. Pa. June 5, 2013).

The elements of slander of title are:

> (1) a false statement;
>
> (2) the publisher either intends the publication to cause pecuniary loss or reasonably should recognize that publication will result in pecuniary loss;
>
> (3) pecuniary loss does in fact result; and
>
> (4) the publisher either knows that the statement is false or acts in reckless disregard of its truth or falsity.

Pro Golf Mfg., 809 A.2d at 246 (citing Restatement (Second) of Torts §623(A) (1977) ("Restatement")); accord Lincoln v. Magnum Land Servs., LLC, 2013 WL 2443926, at *5 (M.D. Pa. June 5, 2013).[11]  The burden of proof to establish these elements is on the plaintiff.  See

---

[11]      Pro Golf's citation of Restatement §623A creates some ambiguity.  Like Pro Golf, the text of Restatement §623A suggests that two (2) types of scienter are required to state a claim: (1) an intent to cause harm or an objectively reasonable likelihood that the publication will cause harm **and** (2) knowledge of the falsity of the publication or reckless disregard of its truth or falsity.  However, Restatement §623A also includes the following "Caveat:"

> The Institute takes no position on the questions of:
>
> > (1) Whether, instead of showing the publisher's knowledge or reckless disregard of the falsity of the statement, as indicated in Clause (b), the other may recover by showing that the publisher had either

(continued...)

Restatement §651.[12]

―――――――――――――――

[11](...continued)

        (a)  a motive of ill will toward him, or

        (b)  an intent to interfere in an unprivileged manner with his interests; or

(2)  Whether either of these alternate bases, if not alone sufficient, would be made sufficient by being combined with a showing of negligence regarding the truth or falsity of the statement.

[12]       In stating this principle, §651 of the Restatement further breaks out the elements of the claim into twelve (12) parts:

        (1)   the existence and extent of the legally protected interest of the plaintiff affected by the falsehood;

        (2)   the injurious character of the falsehood;

        (3)   the falsity of the statement;

        (4)   publication of the falsehood;

        (5)   that the circumstances under which the publication was made were such as to make reliance on it by a third person reasonably foreseeable;

        (6)   the recipient's understanding of the communication in its injurious sense;

        (7)   the recipient's understanding of the communication as applicable to the plaintiff's interests;

        (8)   the pecuniary loss resulting from the publication;

        (9)   the defendant's knowledge of the falsity of the statement or his reckless disregard as to its truth or falsity;

        (10)  the defendant's motivation of ill will;

        (11)  the defendant's intent to affect plaintiff's interests in an unprivileged manner; and

        (12)  abuse of a conditional privilege.

Accord Deve Dev., Inc. v. Gargiulo, 2006 Phila. Ct. Com. Pl. LEXIS 31, at *5 n.1 (2006).

## 2.

The Debtor bases his slander of title claim on the invalidity of the 1st Deed Transfer, i.e.,
his title to the Property was slandered when the 1st Mortgage was recorded, with that slander
being republished each time a holder assigned the 1st Mortgage to another entity.[13]  However, **this**
claim for slander of title fails for at least two (2) reasons.

First, as explained earlier, the Debtor has no standing to claim that the 1st Deed Transfer
is void or avoidable; Snyder had the authority to enter into the 1st Mortgage transaction.
Accordingly, there was nothing false in the publication/recordation of Bank of America's
mortgage and its existence and subsequent assignment cannot impair the Debtor's title to the
Property.

Second, the Complaint lacks facts to support the scienter element of a claim for slander of
title: an intent to cause financial loss and knowledge or a reckless disregard of the falsity of the
recordation and assignment of the 1st Mortgage.  See n.11, supra & accompanying text.[14]

---

[13]       Without any elaboration, the Debtor also claims that the motion to vacate the sheriff's
sale in November 2009 was a slander on his title because Bank of America knew the underlying reason
for the motion was false (i.e., because it was "based [on] a false statement that there [w]as an agreement
between Snyder [and] Defendant when there was no such agreement").  (Debtor's Reply at 14) (Doc.
#15).  It escapes me how a representation that an agreement existed between Snyder (the then-record title
holder of the Property) and a mortgagee (the servicing agent for Bank of America or its predecessor in
interest) to set aside a sheriff's sale of the Property could possibly arise to a slander of the Debtor's title
in the Property because the agreement was made before the Debtor even purchased the property.  Indeed,
had the sheriff's sale not been set aside, it is inconceivable that Snyder would have transferred the
Property to the Debtor via the 2nd Deed Transfer on July 11, 2011.  This component makes Count II
implausible.

[14]       Bank of America also argues that this claim is untimely.  The statute of limitations for
slander of title is one (1) year, see 42 Pa. C.S. §5523; Pro Golf Mfg., 809 A.2d at 246, and the last
alleged slander was the last assignment on July 11, 2013, recorded on July 22, 2013.  (The Debtor's

(continued...)

-16-

## C. Unjust Enrichment

Count III of the Complaint asserts a cause of action for unjust enrichment.

Unjust enrichment is an equitable doctrine in which the law implies a contract between parties and requires one party to compensate the other for a benefit conferred.  See, e.g., Villoresi v. Femminella, 856 A.2d 78 (Pa. Super. Ct. 2004); Mitchell v. Moore, 729 A.2d 1200, 1203-1204 (Pa. Super. Ct. 1999).

The elements necessary to prove unjust enrichment are:

(1)  benefits conferred on defendant by plaintiff;

(2)  appreciation of such benefits by defendant; and

---

[14](...continued)
bankruptcy case was filed on April 21, 2014 and the adversary proceeding was filed on November 30, 2014).  While I am not dismissing the slander of title claim based on Bank of America's statute of limitations defense, I do point out that the claim may well be vulnerable to that defense.

Accepting the questionable proposition that the recordation of a mortgage assignment constitutes a republication of the recordation of the allegedly slanderous mortgage, it is patently clear from the facts in the Complaint that the Debtor's slander of title claims with respect to the 1st Mortgage transaction and the first three (3) mortgage assignments are barred by the statute of limitations. The limitations periods with respect to the 1st Mortgage, and 2007 and 2010 assignments expired before the Debtor purchased the Property on July 11, 2011.  Even if the limitations periods were tolled until the Debtor purchased the Property, they expired on July 11, 2012, almost two (2) years before the Debtor filed this bankruptcy case or this adversary proceeding.

The statute of limitations defense as to the last assignment recorded on July 22, 2013 is more complicated.  The assignment occurred less than one (1) year before the filing of the Debtor's bankruptcy case on April 21, 2014, but more than one (1) year before the commencement of the adversary proceeding on November 30, 2014.  Under 11 U.S.C. §108(a), the limitations period for a debtor's claim that has not expired as of the commencement of the case is extended to the later of the limitations period under applicable nonbankruptcy law or two (2) years after the order for relief.  If §108(a) applies, the Debtor's claim is timely filed with respect to the last assignment.  However, there is a division of authority whether a chapter 13 debtor may invoke the benefits of 11 U.S.C. §108(a). Compare In re Johnson, 2009 WL 2259088, at *2-3 (Bankr. S.D. Ill. July 29, 2009), with In re McConnell, 390 B.R. 170, 180 (Bankr. W.D. Pa. 2008); In re Gaskins, 98 B.R. 328, 330 (Bankr. E.D. Tenn. 1989).  I do not decide that issue because I dismiss this claim on other grounds.

> (3) acceptance and retention of such benefits under such circumstances that it
> would be inequitable for defendant to retain the benefit without payment of
> value.

Mitchell, 729 A.2d at 1203-04; Schenck v. K.E. David, Ltd., 666 A.2d 327, 328 (Pa. Super. Ct.

1995).  Application of the doctrine rests on the factual circumstances in a given case.  Schenck,

666 A.2d at 328.  Thus, the "focus is not on the intention of the parties, but rather on whether the

defendant has been unjustly enriched."  Id.

The Debtor claims that Bank of America has been unjustly enriched by the renovations he

performed on the Property that allegedly increased its value by $25,000.00 to $100,000.00.  The

Debtor argues that Bank of America should not retain the benefits of the increase in value to the

Property (and security interest) without a corresponding payment to the Debtor.

The Complaint falls far short of stating a claim for unjust enrichment.

There are no allegations in the Complaint that support a claim that it would be inequitable

for Bank of America to realize the benefit of any appreciation in the value of the Property

resulting from improvements made by the Debtor (in the event that Bank of America must look

to its collateral for payment of its outstanding claim rather than from a stream of payments from

the Debtor).  The Complaint alleges only that Bank of America knew that the Debtor was making

improvements in the Property before it commenced foreclosure.  There are no allegations that

Bank of America induced the Debtor to do so nor are there any other allegations that distinguish

what occurred here from the run-of-the-mill risk any property owner incurs when expending

money to improve a property that is subject to a mortgage.[15]

---

[15]     This claim also would fail if the Debtor's avoidance claim were meritorious.  In that
event, Bank of America would lose its lien position and would not benefit by the improvements the

(continued...)

## D.  Civil Conspiracy

### 1.

The Debtor asserts a civil conspiracy claim based on his contentions that Bank of America (or its predecessors), along with MERS and Fannie Mae, conspired to charge exorbitant fees in connection with the loan to Snyder from America's Wholesale Lender and that Bank of America lied to the C.P. Court in connection with the motion to set aside the sheriff's sale in order to realize increased proceeds from the Property through a subsequent sheriff's sale.

"A civil conspiracy is a combination of two or more persons to do an unlawful or criminal act or to do a lawful act by unlawful means or for an unlawful purpose." Landau v. Western Pennsylvania Natal Bank, 445 Pa. 217, 224 (Pa. 1971).  "Proof of malice, i.e., an intent to injure, is essential in proof of a conspiracy." Thompson Coal Co. v. Pike Coal Co., 488 Pa. 198, 211 (Pa. 1979).  Conspiracy is actionable when it produced an overt act which injures the complaining party.  Auld v. Mobay Chemical Co., 300 F. Supp. 138, 142 (W.D. Pa. 1969) (citing Helmig v. Rockwell, 389 Pa. 21, 131 A.2d 622 (Pa. 1957)).

The statute of limitations for civil conspiracy is the same as that for the underlying action which forms the basis of the conspiracy.  Kingston Coal Co. v. Felton Mining Co., 690 A.2d 284, 287 n.1 (Pa. Super. Ct. 1997).  The statute of limitations runs from the commission of each overt act which is alleged to have caused the damage.  Auld, 300 F. Supp. at 142.  The statute of limitations in Pennsylvania for fraud or any other action for damages based on "tortious conduct"

---

[15](...continued)
Debtor made  increasing the Property's value.  An unjust enrichment claim requires a benefits conferred on the defendant by the plaintiff.

is two (2) years.  42 Pa. C.S. §5524(7).

## 2.

Bank of America offers several grounds for dismissal of the civil conspiracy claims:

(1) the Debtor's lack of standing;

(2) failure to state a plausible claim for civil conspiracy; and

(3) expiration of the statute of limitations.

I agree with all three (3) of Bank of America's arguments.

The Complaint focuses on the loan transaction between Snyder and America's Wholesale Lender and contains no allegations that the Debtor was a party to any loan or mortgage agreement which the Debtor claims were affected by a civil conspiracy.  Thus, the Debtor is complaining of acts allegedly committed against a third party (Snyder) and has not pled any injury to himself.  He has no legally protectable interest in shielding Snyder from tortious conduct by Snyder's lender; he cannot sue for harms allegedly suffered by Snyder.  He lacks standing to sue for alleged harms suffered by a third party.

Further, the Debtor failed to set forth facts suggesting that Bank of America committed an overt act done in pursuit of a common purpose that is unlawful or that Bank of America acted with malice or an intent to injure the Debtor in any way.

Lastly, the civil conspiracy claim is time-barred.  The Snyder mortgage loan transaction occurred on October 10, 2005, and no action was taken to redress any injury within the two-year statute of limitations.  Bank of America's motion to set aside the sheriff's sale was filed November 23, 2009 with the C.P. Court.  (Compl., Ex. G).  The statute has also run on that

purported fraudulent filing.

### E. Fraud

The Debtor's Count VI fraud claims are grounded in the same allegations as his civil conspiracy claims, i.e., that Bank of America (or its predecessors) along with MERS and Fannie Mae committed fraud by charging exorbitant fees in connection with the loan to Snyder from America's Wholesale Lender and that Bank of America's motion to set aside the sheriff's sale in the C.P. Court was fraudulent.

A plaintiff must prove the following elements to recover on a claim of fraud:

    (1) a misrepresentation;

    (2) which is material to the transaction at hand;

    (3) made falsely, with knowledge of its falsity or recklessness as to whether it is true or false;

    (4) with the intent of misleading another into relying on it;

    (5) justifiable reliance on the misrepresentation; and

    (6) the resulting injury was proximately caused by the reliance.

E.g., Gibbs v. Ernst, 538 Pa. 193, 207 (Pa. 1994); SPP §21:65.

The statute of limitations for fraud under Pennsylvania law is two (2) years.  42 Pa. C.S. §5524(7).

The Debtor's fraud claims have the same defects as the civil conspiracy claims.  The Debtor lacks standing to sue for alleged frauds committed against Snyder and the applicable two (2) year statute of limitations has run.  Further the Complaint's allegations do not support at least

two (2) essential elements of a fraud claim: the Complaint describes neither any factual

misrepresentations allegedly made by Bank of America nor facts to support an inference that the

factual misrepresentations were made with the intent to mislead or deceive.

## F.  Valuation of Property

The Debtor seeks to modify the allowed secured claim and value the Property at

$100,000.00.  The Debtor bases this request on 11 U.S.C. §506(a)(1), which provides:

> **An allowed claim** of a creditor secured by a lien on property in which the estate
> has an interest, or that is subject to setoff under section 553 of this title [11 USCS
> § 553], **is a secured claim to the extent of the value of such creditor's interest
> in the estate's interest in such property**, or to the extent of the amount subject to
> setoff, as the case may be, **and is an unsecured claim to the extent that the
> value of such creditor's interest or the amount so subject to set off is less than
> the amount of such allowed claim**. Such value shall be determined in light of the
> purpose of the valuation and of the proposed disposition or use of such property,
> and in conjunction with any hearing on such disposition or use or on a plan
> affecting such creditor's interest.

Presumably, this claim is the Debtor's fall-back.  If he cannot avoid Bank of America's

mortgage, he hopes to reduce its allowed secured claim from $404,625.07 to $100,000.00 and

provide for payment of the allowed secured claim in his chapter 13 plan pursuant to 11 U.S.C.

§1325(a)(5).

Bank of America contests the Debtor's valuation and asserts that the value is in excess of

the Debtor's estimate.  Bank of America also argues that the Debtor's request to reduce the

secured claim must fail because the Debtor cannot prove that he has the ability to make payments

on the reduced secured claim.  (Motion at 21).  According to Bank of America, the Debtor's

schedules establish that he has no source of funding to make payments on the 1st Mortgage.[16]

I will deny the Motion as to this claim.  While Bank of America's contention that the Debtor lacks the ability to fund a chapter 13 plan to provide for a $100,000.00 allowed secured claim might be a valid objection to confirmation or a basis for dismissal of the chapter 13 case, it is unrelated to the Debtor's request for a determination under 11 U.S.C. §506(a).[17]

## G.  Leave to Amend

After granting a motion to dismiss a complaint under Rule 12(b)(6), a court should grant the plaintiff leave to amend "unless an amendment would be inequitable or futile."  Alston v. Parker, 363 F.3d 229, 235 (3d Cir. 2004).  "'Futility' means that the complaint, as amended, would fail to state a claim upon which relief could be granted," Shane v. Fauver, 213 F.3d 113, 115 (3d Cir. 2000) (citing In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410 (3d Cir.

---

[16]    Bank of America also notes that valuation of the Property need not be by adversary proceeding and the Debtor should file a motion under Fed. R. Bankr. P. 3012.

Fed. R. Bankr. P. 3012 provides:

The court may determine the value of a claim secured by a lien on property in which the estate has an interest on motion of any party in interest and after a hearing on notice to the holder of the secured claim and any other entity as the court may direct.

In filing the adversary proceeding, Bank of America was provided with more formal process and procedural safeguards than a mere motion.  It would exalt form over substance to dismiss this action and compel the Debtor file a motion under Rule 3012.

[17]    In denying the Motion, I have not considered the effect, if any, of 11 U.S.C. §1322(b)(2) on this claim.  See Nobelman v. American Savings Bank, 508 U.S. 324 (1993).

1997)), or the amended complaint would not withstand a renewed motion to dismiss, <u>Jablonski v. Pan American World Airways, Inc.</u>, 863 F.2d 289, 292 (3d Cir. 1988).  For instance, if there is an obvious meritorious defense, such as the statute of limitations, then dismissal with prejudice would be proper as no amendment could cure the defect.  <u>See e.g.</u>, <u>Massarsky v. General Motors Corp.</u>, 706 F.2d 111, 125 (3d Cir. 1983); <u>Jablonski</u>, 863 F.2d at 292.  The same is true of claims that have no arguable basis in law.  <u>Harrison Beverage Co. v. Dribeck Importers, Inc.</u>, 133 F.R.D. 463, 468 (D.N.J. 1990).

In this proceeding, any proposed amendment to the dismissed claims would be futile; the amended claims would not withstand a renewed motion to dismiss.[18]  Leave to amend is not granted.  Counts I, II, III, IV, and VI will be dismissed with prejudice.


## V.  CONCLUSION

For the reasons set forth above, Bank of America's Motion to Dismiss is granted in part and denied in part.  Counts I, II, III, IV, and VI will be dismissed with prejudice.

An appropriate order follows.

**Date: <u>May 12, 2015</u>**

**ERIC L. FRANK
CHIEF U.S. BANKRUPTCY JUDGE**

---

[18]    The only possible amendment that would revitalize the Debtor's claims would be an allegation that the Debtor was a beneficiary of Dorothy M. Snyder's Estate.  There is no reason to believe that the Debtor can make that allegation.